IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| United States of America, | ) | CRIMINAL NO. 3:10-1160-CMC |
|---|---|---|
| v. | ) | **OPINION and ORDER** |
| Avery Deron Sumter, | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's motion for relief filed pursuant to 28 U.S.C. § 2255. The Government has responded in opposition, moving for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Defendant was advised of the procedures and necessity to respond to the Government's dispositive motion. Defendant, through counsel, filed an untimely response to the Government's motion on November 12, 2012.[1] Nevertheless, the court has considered Defendant's response to the Government's motion, and for the reasons below, finds the Government is entitled to summary judgment.

Defendant presents four (4) grounds for relief in his § 2255 motion, all of which allege ineffective assistance of counsel. Defendant contends counsel was ineffective in allegedly: failing to investigate or advise Defendant of the possibility of a defense of actual or legal innocence based upon "subterfuge and/or sting operation by law enforcement officers[,]" Mot. to Vacate at 1 (ECF No. 248, filed Sept. 14, 2012); failing to investigate or advise Defendant of a defense of actual innocence based upon "the recantation of the statement of a key government witness[,]" *id*. at 2;

---

[1]Defendant's § 2255 motion was filed by counsel. However, out of an abundance of caution, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which set the date for response as thirty-four (34) days from the date of the issuance of the order. *See* Order (ECF No. 252, filed Oct. 1, 2012). Defendant's response was due November 5, 2012. Defendant's response was not filed until November 12, 2012.

1

advising Defendant that he "would receive a substantially lower sentence than he in fact received" and advising Defendant that his sentence would be based upon "a substantially lower quantity of drugs than was determined to be attributable" to Defendant, *id*.; and allowing Defendant to waive his appeal rights when "he received no reasonable or adequate consideration from the government for the waiver of such appeal rights." *Id*.

Defendant did not contend in his original motion that absent counsel's alleged ineffectiveness, he would not have pleaded guilty but instead, would have insisted on proceeding to trial. *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (noting that the defendant "did not allege in his habeas petition that, had counsel [been effective], he would have pleaded not guilty and insisted on going to trial."). In response to the Government's motion for summary judgment, however, Defendant avers that

> I was told by my attorney that I would be sentenced for involvement with 500 grams or less of cocaine if I pled guilty. If I had known that I was going to be sentenced for involvement with more th[a]n five kilograms of cocaine, I would not have entered a guilty plea. Instead, I would have proceeded to trial.

Aff. of Avery Sumter at ¶ 3A (ECF No. 254-1, filed Nov. 12, 2012). Additionally, Defendant avers that counsel did not discuss potential defenses with him (including impossibility or innocence based upon the recantation of government witnesses), and had counsel done so, Defendant would not have entered a guilty plea and would have proceeded to trial. *Id*. at 3C.

**I. STANDARD**

The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant. *Id*. As to the first prong of the *Strickland* test,

2

a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. The question whether counsel's performance was deficient may only be answered by viewing counsel's actions or decisions in the light of all surrounding circumstances at the time the decision was made, not in the artificial light of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993). A reviewing court should not second-guess defense counsel's tactical decisions. *See McDougall v. Dixon*, 921 F.2d 518, 537-39 (4th Cir. 1990). In attempting to establish ineffective assistance of counsel, Defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as this court applies a "heavy measure of deference to counsel's judgments." *Id*. at 689-91.

The second prong of the *Strickland* test requires Defendant also establish prejudice. Defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In certain cases, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissable for a lack of prejudice. *Id*. at 697.

**A. Ineffective Assistance of Counsel – Defendant Who Pleaded Guilty:** The same two-part test enunciated in *Strickland* applies in the context of cases in which a defendant enters a guilty plea. To establish prejudice in the context of a guilty plea, Defendant must show that "there is a reasonable probability that, but for counsel's error, [Defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "The added uncertainty that results when there is no extended formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance." *Premo*

v. *Moore*, 562 U.S. ___, 131 S. Ct. 733, 745 (2011). "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.[2]

"A defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects [misadvice of counsel] and the defendant expresses that he understands the admonishment." *United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012). This includes a court's "careful explanation of the potential severity of the sentence" during a Rule 11 hearing, *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995), including "specifically inform[ing] [the defendant] of the maximum penalties he face[s]," and inquiring whether a defendant understands the "potential sentence he face[s]." *Id*.

**B. Appeal Waiver:** "The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal." *United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005). Even if this court engaged in a complete Rule 11 plea colloquy, a waiver of the right to appeal may not be knowing and voluntary if tainted by the advice of constitutionally ineffective trial counsel. *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993). This is because

---

[2]Two factually distinguishable cases, recently decided by the Supreme Court discussing the Sixth Amendment right to counsel during the plea-bargaining process do not alter the court's analysis. *See Lafler v. Cooper*, 566 U.S. __, 132 S. Ct. 1376 (2012); *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399 (2012). These cases address instances where "inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome." *Lafler*, 132 S. Ct. at 1383. The Supreme Court made clear that these cases do not alter the *Hill* analysis for cases "where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial." *Frye*, 132 S. Ct. at 1409. In this case, of course, Defendant pleaded guilty and makes no argument that a more favorable offer than that to which he acceded was presented to him by the Government.

4

"[a] decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in criminal cases.' " *DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Blick*, 408 F.3d at 169 (internal quotation and citation omitted); *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (same).

## II. Discussion

### A. Failure to Investigate/Advise of Defenses

1. Innocence Defense – Subterfuge and/or Sting Operation

Defendant first argues counsel failed to investigate or advise him of the possibility of a defense of innocence based upon a "subterfuge and/or sting operation by law enforcement officers[,]" Mot. to Vacate at 1 (ECF No. 248). In support of its motion for summary judgment, the Government presents the affidavit of Defendant's trial counsel, Timothy Ward Murphy (Murphy). Murphy avers he researched the defenses of entrapment and withdrawal, and "the United States had a very strong case on the conspiracy counts – especially the drug and robbery counts." Aff. of Timothy Ward Murphy at ¶ 8 (ECF No. 250-1).

The essence of a criminal conspiracy is the agreement to commit the crime. *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003). A defendant "can be found guilty of criminal conspiracy even though the object of [the] conspiracy is unattainable from the very beginning." *United States v. LaBudda*, 882 F.2d 244, 248 (7th Cir. 1989). "In the context of drug crimes, these principles leave a defendant culpable for conspiracy even if no illegal substance was ever involved."

*United States v. Diaz-Calderon*, 216 F. App'x 331, 338 (4th Cir. 2007). However, a defendant cannot be convicted of conspiracy when solely conspiring with a government agent. *See United States v. Lewis*, 53 F.3d 29, 33 (4th Cir. 1995).

The record establishes Defendant conspired with his two co-defendants to obtain and distribute cocaine. The Defendants believed individuals with whom they were dealing were drug couriers when they in fact were undercover agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF). Therefore, the conspiracy, a "distinct evil," "may exist and be punished whether or not the substantive crime ensues[,]" *Jimenez Recio*, 537 U.S. at 274-75, *i.e.*, regardless of the impossibility of the conspiracy's ultimate objective.[3]

Accordingly, the evidence establishes that Defendant entered into a conspiracy to obtain cocaine, regardless of whether or not the ultimate objective of the conspiracy was attainable. Therefore, the Government is entitled to summary judgment on Defendant's first-listed ground for relief, and it is dismissed with prejudice.

<u>2. Innocence Defense – Recantation of Statement of Key Government Witness</u>

Defendant next contends counsel failed to investigate a defense of actual innocence based upon "the recantation of the statement of a key government witness . . . ." Mot. at 2. Defendant contends that prior to the entry of Defendant's guilty plea, each co-defendant recanted inculpatory

---

[3]Defendant cites *Ventimiglia v. United States*, 242 F.2d 620 (4th Cir. 1957), in support of his argument that because of the ATF's involvement, it was factually impossible for Defendant to be a conspirator in a conspiracy which (Defendant maintains) did not really exists. Decided in 1957, *Ventimiglia* was a case involving a violation of the Taft-Hartley Act. The Fourth Circuit found the defendant could not have been guilty of conspiring to violate the statute when the individual with whom the defendant was dealing did not meet the statutory definition of a "representative" of employees. *See generally id*. *Verntimiglia* is not applicable to the current case and the passage cited by Defendant in his reply brief is *dicta*.

statements made to law enforcement after the co-defendant was arrested. Defendant maintains that "[w]ith the recantations, [Defendant] submits that the government could not prove beyond a reasonable doubt that [Defendant] engaged in the conspiracy at issue." Memo. in Supp. of Mot. at 23 (ECF No. 254). However, in the same breath, Defendant, through counsel, argues that "[a]fter being arrested, the [Defendant] told law enforcement that the confidential source informed him that the meeting on November 16, 2010 was for the purpose of discussing a purchase of seven kilograms of cocaine." *Id*.

In response, Murphy attests he was given a handwritten statement

> purportedly written [by] one of the co-defendants recanting certain aspects of his prior statements on the issues of seeing weapons and knowing the parties were driving to a robbery. . . . In my view, the statement was useful as an impeachment tool at trial. . . . It was my view that the United States need not call either of the co-defendants as witnesses at my client's trial in order to produce sufficient evidence for a conviction.

Murphy Aff. at ¶¶ 9-10. Murphy does not indicate which co-defendant provided this statement.[4]

Even assuming counsel Murphy had access to both of these letters prior to the entry of Defendant's guilty plea, Defendant fails to establish how he was prejudiced by this alleged ineffectiveness.[5]

---

[4] It appears this is the "recantation" of co-defendant Shaquan Hines. *See* ECF No. 254-3.

[5] The letters attached to Defendant's response to the Government's summary judgment motion are of Defendant's co-conspirators, purportedly written in March 2011. The first letter, written by co-defendant Lonnie Jacobs, indicates that he "never once said I agreed to rob[] with anyone but it was [illegible] that I did." ECF No. 254-2. This letter attempts to negate Jacobs' own involvement in the offense, but does not disavow the existence of a conspiracy between Defendant and the remaining co-defendant, Shaquan Hines. Moreover, on May 11, 2011, Jacobs entered a guilty plea, after a properly conducted Rule 11 hearing, to conspiracy to commit Hobbs Act robbery, a violation of 18 U.S.C. § 1951, the very charge he disavowed in the March letter. Accordingly, his admissions under oath operate to negate any "recantation" he may have made in the March letter.
As to the letter of Shaquan Hines, it was later discredited at Defendant's sentencing, where

Upon arrest, Defendant, after being advised of his *Miranda*[6] rights, admitted to his involvement in a conspiracy to obtain cocaine. Defendant never sought to challenge the voluntariness of this interview before he pleaded guilty. Additionally, a recording of the events of November 16, 2010, presented by the Government at Defendant's sentencing, established that Defendant was well aware of the purpose of the trip to the "stash" house, including the fact that a robbery was to occur and the amount of drugs which the defendants believed they would obtain. Finally, during his Rule 11 hearing, Defendant attested that

> dealing with the conspiracy, all I know is I was suppose[d] to receive 56 grams at the conspiracy. Like I told my lawyer, that's what I – I plead to during this whole time. So, I mean, like far as I know, we [were] suppose[d] to argue [about amounts greater than 56 grams] in sentencing or whatever, so that's basically it, Your Honor, with that.
>
> [The Court:] All right. Well, let me ask you this. Do you agree that you met with at least one other defendant and discussed an agreement to try and get cocaine?
>
> [Defendant:] Yes, Ma'am.
>
> [The Court:] And do you agree that an agreement was reached among you and at least one other defendant that there would be an effort to obtain a quantity of cocaine?
>
> [Defendant:] Yes, Ma'am.
>
> [The Court:] And do you agree that after that agreement was reached that there were actions that were taken to obtain – to try and obtain cocaine, that there was an effort begun to move towards getting cocaine? . . .
>
> [Defendant:] Yes, Ma'am.

Tr. of Rule 11 Hrg. at 27-28 (ECF No. 192) (emphasis added).

---

the Government offered evidence and testimony regarding Defendant's knowledge relating to the amount of drugs which the co-conspirators attempted to obtain and the presence of firearms.

[6]*Miranda v. Arizona*, 384 U.S. 436 (1966).

8

"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' " *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), as courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). *See also Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975) ( "[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." ), *partially overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir. 1985) (en banc). "Indeed, because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.' " *White*, 366 F.3d at 295-96 (quoting *Blackledge*, 431 U.S. at 74).

Accordingly, allegations in a § 2255 motion that directly contradict the defendant's sworn statements made during a properly conducted Rule 11 colloquy are, in almost every circumstance, "palpably incredible" and "patently frivolous or false." *Crawford*, 519 F.2d at 350. Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and this court should, without holding an evidentiary hearing, dismiss a § 2255 motion or ground for relief that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary benefit of Rule 11 colloquies would be lost-"permit[ting] quick disposition of baseless collateral attacks," *Blackledge*, 431 U.S. at 79 n.19.

Defendant, under oath, admitted his involvement in the conspiracy to possess with intent to distribute a quantity of cocaine. Defendant does not contend that he misunderstood the court's questions or was somehow incompetent to do so. Accordingly, the fact that his co-defendants

9

"recanted" the statements previously given to law enforcement fails to undermine his own admissions, both after his arrest and under oath at his Rule 11 hearing, of his involvement in this conspiracy.

Therefore, the Government is entitled to summary judgment on this claim and it is dismissed with prejudice.

### B. FAILURE TO PROPERLY ADVISE REGARDING AMOUNT OF DRUG TO BE ATTRIBUTED

Defendant next maintains he received ineffective assistance of counsel when counsel allegedly informed him that his sentence would be based upon a "substantially lower" quantity of drugs than was ultimately attributed to Defendant at sentencing. Mot. at 2. Defendant avers that

> I was told by my attorney that I would be sentenced for involvement with 500 grams or less of cocaine if I pled guilty. If I had known that I was going to be sentenced for involvement with more th[a]n five kilograms of cocaine, I would not have entered a guilty plea. Instead, I would have proceeded to trial.

Aff. of Avery Sumter at ¶ 3A (ECF No. 254-1, filed Nov. 12, 2012). In support of his averment, Defendant offers a copy of an e-mail from Murphy to Tomika Sumter, wife of Defendant, which states that a plea offer was made by the United States for a

> plea to the lesser included offense (LIO) of "Conspiracy to possess to distribute and to distribute a quantity of cocaine", as opposed to the prior offer which was a plea to the LIO of "conspiracy to possess to distribute and to distribute 500 grams" and the Indicted amount of 5 [kilograms]; [ ] The practical effect of this [is] that Avery's exposure would be 0-20 and we could use the sentencing hearing to argue about weight...[sic] . . . There are no guarantees about the actual sentence...[sic] the US will be arguing about "weight" and "guns"...[sic] but it allows us to argue back and gets us in the right forum to do it...[sic] it also really allows us to drive the sentence below the five year floor with a strong and aggressive sentencing case . . . ."

ECF No. 254-1 at 2 (emphasis in original).[7]

---

[7]The email indicates that at sentencing, Defendant could pursue arguments to "drive the sentence below the five year floor." ECF No. 254-1 at 2. However, as noted earlier in the e-mail,

Defendant's counsel attests that in the course of discussing the plea offer with Defendant,

> I discussed a range of sentences guided by the United States Sentencing Guidelines; [t]he range of sentences I discussed with my client [was] based upon the information in the discovery – which always included a calculation based upon a maximum amount of attributable cocaine of about seven kilograms. I never indicated to my client that the court would sentence him to a particular sentence nor did I render a specific opinion that a particular sentence was likely.

Murphy Aff. at ¶¶ 12-13 (ECF No. 250-1).

As noted above, "[a] defendant may be unable to show prejudice [relating to ineffective assistance of counsel] if at the Rule 11 proceeding the district court provides an admonishment that corrects [misadvice of counsel] and the defendant expresses that he understands the admonishment." *United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012). This includes a court's "careful explanation of the potential severity of the sentence" during a Rule 11 hearing, *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995), including "specifically inform[ing] [the defendant] of the maximum penalties he face[s]," and inquiring whether a defendant understands the "potential sentence he face[s]." *Id.*

Even assuming counsel's advice prior to the entry of Defendant's guilty plea was incorrect, the following colloquy occurred at Defendant's Rule 11 hearing:

> [The Court:] You're proposing to plead guilty to what we call a lesser included charge of Count One. In other words, right now Count one is a drug conspiracy charge that refers to 5 kilos or more of cocaine. But you're not going to plead to that 5 kilos or more of cocaine. You're proposing to plead guilty to what's called a lesser included charge, that is a conspiracy to possess with intent to distribute a quantity of

---

the statutory penalty for the lesser included offense of conspiracy to possess to distribute and to distribute a quantity of cocaine is 0-20 years' imprisonment. Counsel apparently included information relating to the statutory mandatory minimum sentence of five years applicable to the offense of conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine, which was the previous plea offer. *See id*.

cocaine, and so you're not going to plead to that cutoff of 5 kilos or more. It's going to be a – just a quantity of cocaine.

Now the effect of that is on the penalty. When you – when you have it – when it says just a quantity of cocaine instead of saying 5 kilos or more of cocaine, it affects the penalty that applies. And as you can see in your plea agreement on page two, when you have a case that involves less than 500 grams of cocaine and you have a person who has no prior felony drug conviction, then if they plead guilty to that lesser included offense, they would face a term of imprisonment of not more than 20 years, no parole, no probation, a fine of $1 million, a term of supervised release of at least three years, and a special assessment of $100.

So, if you plead guilty to this reduced charge, you'll face up to 20 years in prison plus those other provisions that I just went over with you. Do you understand that?

[Defendant:] Yes, Ma'am.

Tr. of Rule 11 Hrg. at 17 (ECF No. 192, filed Sept. 28, 2011). Later, the court advised:

Now, we have gone over the statutory penalties. I mentioned to you a moment ago the Guidelines. Have you and Mr. Murphy had a chance to talk about the Guidelines and how they might actually be calculated in your case?

[Defendant:] Yes, Ma'am.

[The Court:] All right. I'm sure Mr. Murphy has done his best to try to predict for you what he thinks your Guideline range will be. He just can't guarantee you that he's correct. Nobody can tell you what that Guideline range is going to be today because until that [Presentence] report has been written and I have ruled on any objections, we won't know what your Guideline range is going to be. And so sometimes it turns out that the Guideline range is higher than what the lawyer thought. Sometimes it turns out the Guideline range is lower than what the lawyer thought. Many times it turns out that the Guideline range is exactly what the lawyer said it would be. But in any of those circumstances, if the Guideline range is different from what you thought, you wouldn't be able to withdraw from your plea of guilty for that reason.

Do you understand that?

[Defendant:] Yes, Ma'am.

*Id*. at 23-24.

12

> Finally, the court advised Defendant
>
>> let me just caution you that it's going to be very important to you to get credit for what we call acceptance of responsibility, ans so you need to be really sure that you tell the truth when you talk to the probation office [during a presentence report interview] and that you tell the truth to me.
>>
>> [Defendant:] Yes, Ma'am.
>>
>> [Court:] Because, you know, people sometimes think that they are better off if they say that what their involvement was was only a small amount. They think that if it's more, it's going to make their sentence higher, ans so they try to say it was less, they didn't know anything about anything other than 2 ounces or whatever, and then it turns out that they did know more and then they have lost their acceptance of responsibility and end up in a worse situation than they would be if they just told the truth.
>>
>> So, I just wanted to caution you about that. It's not always better to have a smaller amount.
>>
>> [Defendant:] Yeah.
>>
>> [Court:] It's always better to tell the truth because you can claim that you fully accepted responsibility. You understand?
>>
>> [Defendant:] Yes, Ma'am.
>
> *Id*. at 29-30.

The record establishes that counsel was correct that the *statutory* imprisonment penalty for Defendant's offense of conviction would be based upon a plea to involvement in a conspiracy to possesses with intent to distribute and to distribute less than 500 grams of powder cocaine. The statutory penalty for this offense is 0-20 years' imprisonment, and Defendant was sentenced to 188 months' imprisonment, well below that statutory maximum for Defendant's offense of conviction. However, even assuming counsel provided incorrect advice to Defendant, Defendant was advised at his Rule 11 hearing by this court of the statutory penalty, the interplay between the statutory

13

penalty and the Guidelines, and the possibility of a sentence higher than that for which he was hoping (based on receiving only two ounces of cocaine from the "robbery").[8] Additionally, Defendant acknowledged, under oath, his understanding of all of these matters.[9]

Accordingly, the Government is entitled to summary judgment, and this claim is dismissed with prejudice.

### C. Appeal Waiver

Defendant's final claim for relief is that counsel was ineffective in allowing Defendant to enter into a plea agreement with the Government which contained a waiver of his appellate rights. Defendant contends he "received no reasonable or adequate consideration from the government for the waiver of such appeal rights." Mot. to Vacate at 2.

As noted above, "[t]he validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal." *United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005). Even if this court engaged in a complete Rule 11 plea colloquy, a waiver of the right to appeal may not be knowing and voluntary if tainted by the advice of constitutionally ineffective trial counsel. *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993). This is because "[a] decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in

---

[8] Moreover, Defendant had a previous federal conviction in this Court, and was aware of how the federal statutory penalty and the Guidelines are applied. *See United States v. Sumter*, D.S.C. Cr. No. 3:02-1374-CMC.

[9] Also in support of his position, Defendant contends in his Memorandum in Support of his Motion to Vacate that during the plea hearing he was "told by his counsel that he would be sentenced for involvement with **500 grams or less** of cocaine if he pleaded guilty." Mem. in Supp. at 3 (ECF No. 254). However, this contention is not submitted via affidavit, and is accorded no weight in this court's analysis of Defendant's claim.

criminal cases.' " *DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Blick*, 408 F.3d at 169 (internal quotation and citation omitted); *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (same).

An examination of the totality of the circumstances reveals that Defendant's waiver of his appellate rights was knowing and voluntary. At his Rule 11 hearing, this court advised Defendant that

> Paragraph Nine [of the plea agreement] is a very important provision because that is a waiver. In Paragraph Nine you're giving up your right to appeal from issues at sentencing. In other words, even though you are pleading guilty here today, you are going to be sentenced at a later time and you would not be able to appeal from issues at sentencing or file a post-conviction action later challenging your conviction or sentence with certain limited exceptions.
>
> Do you understand that, Mr. Sumter?
>
> [Defendant:] Yes, Ma'am.

Tr. of Rule 11 Hrg. at 22. Defendant does not now contend that he did not understand the explanation, or that he was incompetent to answer this court's questions.

Additionally, Defendant has failed to establish prejudice relating to his waiver of appellate rights. Defendant was sentenced on September 16, 2011. On September 20, 2011, Defendant filed a *pro se* notice of appeal, which was forwarded to the Fourth Circuit Court of Appeals. Defendant was appointed counsel in that Court, and on November 13, 2011, Defendant filed a voluntary withdrawal of appeal. *See United States v. Sumter*, Fourth Circuit Court of Appeals No. 11-4920 (Docket No. 37-1).

Defendant's only contention is that he did not receive "reasonable or adequate consideration" for this waiver. As noted by the Government, Defendant's plea resulted in the dismissal of Count Four of the indictment, which carried, upon conviction, a mandatory consecutive five-year sentence. Moreover, despite the waiver, Defendant appealed, and he offers no argument or evidence that the United States moved to enforce the waiver. Therefore, he fails to establish any prejudice from the waiver of his appellate rights.

Accordingly, the Government is entitled to summary judgment on this claim, and it is dismissed with prejudice.

#### CONCLUSION

For the reasons noted above, the Government's motion for summary judgment is **granted** and this matter is dismissed with prejudice.

#### CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 20, 2012